Southern Indiana R. Co. *v.* Peyton.

SOUTHERN INDIANA RAILWAY COMPANY *v.* PEYTON,
ADMINISTRATOR.

[No. 19,519.    Filed Oct. 29, 1901.    Rehearing denied Feb. 27, 1902.]

NEGLIGENCE.—*Pleading.—Contributory Negligence.— Statutes.—Application.*—The act of 1899 (Acts 1899, p. 58, §359 Burns 1901), providing that in all actions for damages arising from personal injury or death it shall not be necessary to allege or prove freedom from contributory negligence on the part of plaintiff, or on the part of the person for whose injury or death the action is brought, applies to a cause of action existing at the time of its passage, where the suit was not commenced until after the act took effect. *pp. 692, 693.*

SAME.—*Pleading.—Contributory Negligence.*—Under the act of 1899 (Acts 1899, p. 58, §359 Burns, 1901), the plaintiff in an action for personal injury is required to allege and prove by a preponderance of the evidence that the defendant's negligence was the proximate cause of his injuries, and, if he has by his own conduct forfeited his right of recovery, such delinquency, when not disclosed by plaintiff, if made available to the defendant, must be established as a matter of defense by a like preponderance of the evidence. *pp. 693, 694.*

SAME.—*Pleading.—Contributory Negligence.—Presumptions.*—No adverse presumptions arise because of the failure of plaintiff to allege freedom from contributory negligence in an action for personal injuries or death. *p. 694.*

SAME.—*Pleading.—Contributory Negligence.*—A complaint in an action for the death of a railroad engineer, caused by a collision with defendant's train which was being operated over a portion of the line on which decedent was employed, is not bad for failing to allege that decedent, before attempting to pass the point of junction, stopped the train and looked and listened, since if such failure to stop amounted to contributory negligence it was matter to be pleaded in defense. *p. 694.*

APPEAL AND ERROR.—*Waiver.*—Where no separate presentation is made on appeal to an objection to the action of the court in overruling a motion to direct a verdict for defendant, it will be deemed as waived. *p. 695.*

VERDICT.—*Answers to Interrogatories.— Presumption.*— A general verdict for plaintiff in an action for the death of a railroad engineer will not be reversed on answers to interrogatories tending to show contributory negligence on the part of deceased, where such answers may be overcome by reasonable presumptions in favor of the general verdict. *pp. 695–700.*

TRIAL.—*Instructions.*—*Complaint.*—Where both paragraphs of a complaint stated a good cause of action it was not error for the court to instruct the jury that if plaintiff had proved by a fair preponderance of the evidence the material allegations of either paragraph of her complaint she was entitled to recover. *pp. 700, 701.*

SAME.—*Instructions.*—In the trial of an action for death caused by the alleged negligence of defendant the court is not required to embody all minor and unfavorable facts, or facts in support of the defendant's theory, in its instructions, and available error cannot be predicated upon such omission, where the desired instructions were not tendered by defendant. *p. 701.*

From Martin Circuit Court; *H. Q. Houghton,* Judge.

Action by Maude E. Peyton, administratrix of the estate of George J. Peyton, deceased, against the Southern Indiana Railway Company for the death of decedent, caused by the alleged negligence of defendant. From a judgment for plaintiff, defendant appeals. *Affirmed.*

*F. M. Trissal, J. H. Shea, C. E. Wood, J. B. Marshall* and *L. J. Hackney,* for appellant.

*W. W. Ireland, J. W. Ogdon, E. Inman, B. K. Elliott, W. F. Elliott* and *F. L. Littleton,* for appellee.

HADLEY, J.—The Evansville and Indianapolis Railroad Company owns and operates a railroad running north and south by the town of Elnora, in Daviess county, at which place it maintains a station. The Southern Indiana Railway Company, appellant, owns and operates a railroad running east and west from Elnora to Westport, in Decatur county. The latter company uses the former's Elnora station, which it reaches, from the north, by means of passing its trains over the north stem of a Y onto the main track of the Evansville and Indianapolis Railroad Company, thence backing down to the station, and thence regaining its own track by heading out on the south stem of the Y. On August 24, 1898, as appellant's passenger train number one, headed in a northerly direction, was in the act of passing from the Y to the main track of the Evansville and Indianapolis Railway Company, it collided with the latter's south

bound locomotive, drawing its passenger train number thirty-three, mortally injuring George J. Peyton, appellee's intestate, who was the engineer in charge of said train thirty-three. This action is by Peyton's legal representative to recover damages for the alleged negligent causing of his death.

The complaint is in four paragraphs to each of which a demurrer was overruled. Trial by jury, verdict and judgment for appellee. Errors are assigned upon the overruling of the demurrers and motion for a new trial. The objections urged to the sufficiency of the complaint are common to each paragraph. The basis of these objections seems to be the absence from the second paragraph of any averment that the decedent was free from contributory fault, the insufficiency of such averments in the first, third, and fourth paragraphs, and the natural inference of contributory negligence, arising from the want of an averment in all the paragraphs that the decedent stopped his train, and looked and listened before attempting to pass the intersecting point of said railroads. The cause of action accrued prior, and this suit was commenced subsequent to, the taking effect of the act of 1899 (Acts 1899, p. 58), which shifts the burden of proving contributory negligence to the defendant. It is claimed (1) that this act is unconstitutional, and (2) if valid, that it does not apply to this case.

The constitutionality of the act has already been affirmed. *Indianapolis St. R. Co.* v. *Robinson, ante,* 232. And we can not concede that the act does not apply to this case. The statute reads: "That hereafter in all actions for damages brought on account of the alleged negligence of any person, copartnership or corporation for causing personal injuries, or the death of any person, it shall not be necessary for the plaintiff in such action to allege or prove the want of contributory negligence on the part of the plaintiff, or on the part of the person for whose injury or death the action may be brought. Contributory negligence, on the part of the

plaintiff, or such other person, shall be a matter of defense, and such defense may be proved under the answer of general denial, *Provided,* That this act shall not affect pending litigation."

Remedial statutes, such as this, which affect only the procedure and practice of the courts in the enforcement of a right, and which do not impair the right itself, or wholly destroy a preëxisting remedy, are retroactive in the sense that they must be applied to causes of action existing at the time of their passage in all cases where the suit is subsequently commenced.   Endlich on Int. of Stat., §§285, 286 and 287; *Connecticut, etc., Ins. Co.* v. *Talbot,* 113 Ind. 373, 378, 3 Am. St. 655; *Logan* v. *Logan,* 77 Ind. 558, 563; *Ralston* v. *Lothain,* 18 Ind. 303; *City of Indianapolis* v. *Imberry,* 17 Ind. 175, 179; *Collier* v. *State, ex rel.,* 10 Ind. 58; *Judkins* v. *Taffe,* 21 Ore. 89, 27 Pac. 221; *Howard* v. *Moot,* 64 N. Y. 262; *State* v. *Shreves,* 81 Iowa 615, 622, 47 N. W. 899; *Wallace* v. *Western, etc., Co.,* 104 N. C. 442, 10 S. E. 552.

The rule springing from such legislation seems to be that litigants must prosecute, or defend, in the manner prescribed at the time the suit is entered, without reference to when the cause of action accrued, or the character of previously existing forms of procedure, though it may turn out that present modes are less advantageous to one of the parties; the practice and procedure of courts being continuously subject to legislative control.   Endlich on Int. of Stat., §285, and authorities cited.

The statute before us does not in any manner excuse or relieve the plaintiff from the consequences of contributory negligence long recognized by the law, nor make the presence of concurrent fault less effective to the defendant in escaping liability.   Its obvious purpose was to restore to litigants in such cases, the just and reasonable rule of the common law as interpreted by the English courts, and from which this court had radically departed.   Under the ancient rule alluded to, and which is adhered to in most of the states of the

Union, the plaintiff, in such cases, is required to allege and prove by a preponderance of evidence that the defendant's negligence was the proximate cause of his injuries, and if he has by his own conduct forfeited his right of recovery, this delinquency, when not voluntarily disclosed by the plaintiff, if made available to the defendant, must be established by him as a matter of defense, by a like preponderance. Such is the full meaning of the statute under consideration, and it must therefore be held to govern the pleadings and procedure in this case. Applying the statute of 1899 to the complaint, and the question arising upon the total absence of any averment in the second paragraph and upon the insufficiency of averments in the other paragraphs of freedom from contributory negligence becomes immaterial.

With respect to appellant's second proposition we deem it proper to say that no adverse inference will arise upon a pleading from the absence of unnecessary averments. Under the statute it was not necessary for the plaintiff to allege and prove the decedent's freedom from contributory negligence. Railroad engineers, like persons in all other vocations, are presumed to do what the law requires of them; and if due care required him to stop his train, and look and listen before attempting to pass the point of junction, if any presumption will arise from the absence of an averment as to the fact, it must be that he did stop it. If he did not stop it, his transgression, if accounted contributory negligence, was a matter of defense that should be established by evidence, not by presumptions.

At least two of the paragraphs of complaint show that the decedent's train was due at the Elnora station at 11:50, and that appellant's train was due at the same place at 11:52 a. m.; and it is averred that the decedent's train was running five minutes late. From these facts it is urged that the complaint reveals culpable negligence on the part of the decedent, in that he approached and attempted to pass the place of intersection, with the knowledge that appellant's

train was due to be on his track at that particular time and place, without first stopping his train, or taking any other precautions to avoid the danger reasonably to be expected. We cannot admit the premise necessary to the validity of the argument. It appears from the complaint that appellant's Y is situate one-fourth of a mile north of the Elnora station and nothing appears as to when appellant's train was due on the Y at the point where the collision occurred, or that the decedent knew when it was due there. If appellant's train was on time, and proceeded without stopping, on the Y, in violation of its alleged duty, and without unnecessary delay, we would be unable to say judicially that it could have switched its train onto the Evansville and Indianapolis Railway Company's track, and backed it down to the station in three minutes; and yet this would be necessary in charging the decedent with knowledge that appellant's train was due at the place of collision when he arrived there with his train.

There are other questions here discussed which are ineffectual to impair the complaint, and which more properly arise upon the answers to interrogatories. Certain other questions suggested should have been reached by motion to make more specific. We think each paragraph of the complaint was sufficient to withstand a demurrer.

Upon the conclusion of the plaintiff's evidence appellant unsuccessfully moved the court to direct the jury to return a verdict in its favor. Appellant was likewise unsuccessful in its motion for judgment in its favor upon the answers to interrogatories. The first of these rulings has received no separate presentation, and objection to it is only suggested in general terms, and it must, therefore, under the oft repeated rule of this court, be deemed as waived. Upon the second, the proposition is that the findings of fact in the answers to interrogatories establish contributory negligence in plaintiff's decedent. The facts disclosed by such answers may be thus summarized: Under some agreement, the terms

of which are not fully disclosed, but which were known to the employes of both companies, the appellant and the Evansville and Indianapolis Railroad companies made common use of the Elnora station for the receipt and discharge of passengers, in the mode set forth in the opening of this opinion. A stipulation in this agreement required the defendant to cause its employes in charge of its trains, before running a train from its Y onto the main track of the Evansville and Indianapolis Railway Company, to stop and send forward a flagman to warn any train approaching on the Evansville and Indianapolis Railway Company's track. This agreement was known to the employes of both companies and had been acted upon and observed for more than six months before the accident. On the current time-table of the Evansville and Indianapolis Railway Company was printed the following as special instructions: "C. When tracks of two railroads cross each other, or in any way connect at common grades, all trains or engines passing over such tracks shall come to a full stop before reaching such crossing. * * * i. S. I. (Southern Indiana) railway trains and engines will occupy main track inside yard limits at Elnora; in time of all trains, have your train under full control. * * * k. S. I. R. R. trains between Elnora and Washington will be governed by time-table and special instructions of the E. & I. R. R. Conductors and engineers must supply themselves with E. & I. time-tables." The following rule of the Evansville and Indianapolis Railway Company was also in force: "All trains must approach the end of double tracks, junctions, and railroad crossings at grade, prepared to stop, and must not proceed until the switches, or signals are seen to be right, or the track is plainly seen to be clear. Where required by law all trains must stop."

George Peyton, the deceased, upon reaching the northern yard limit, which was 900 feet north of the fatal junction, had and kept his train under full control, running at the rate of twelve to fifteen miles an hour; from said northern limit

neither he nor his fireman could have seen the defendant's approaching train. As Peyton approached the intersection, with his train under full control, appellant's switch target at the place was in such position as to indicate to him a free and safe track, and he did not stop his train before the collision. Those in charge of appellant's train had not sent forward a flagman to warn Peyton of their train's approach, nor had they set the switch for passage of their train onto the track occupied by Peyton, and without stopping continued to run their train forward until the same occupied such a part of the Evansville and Indianapolis Railway Company's track as precluded the passage of Peyton's train without collision. Peyton knew that the appellant's train was due at the junction at the time the collision occurred. The Evansville and Indianapolis Railway Company's rule C did not require Peyton to stop his train at the intersection, and ascertain whether another train was about to come upon his track. In the collision that resulted, Peyton was killed, and the driving rods and cylinder of defendant's engine on the side of contact were torn away. The contention upon these facts is that as Peyton ran his train, which was five minutes late, at a speed of twelve to fifteen miles an hour, and reaching the point of collision on the time of the other train, without stopping his train and making an effort to ascertain as to the other's presence, in violation of the established rules of his employer, his conduct must as matter of law be adjudged as negligence contributory to his death. This contention must be brought within the limits of the rule, that all reasonable presumptions must be indulged against the special answers, and in support of the general verdict, and if the general verdict, thus aided, is not in irreconcilable conflict with the answers, it must stand. *City of South Bend* v. *Turner,* 156 Ind. 418; *Roush* v. *Roush,* 154 Ind. 562; *Consolidated Stone Co.* v. *Summit,* 152 Ind. 297.

The reason for the rule as stated in Turner's case, *supra,* is "that the jury is required to pronounce upon all the issu-

able facts proved in the case, while the court in testing the force of isolated facts disclosed by answers to interrogatories, does not know, and cannot know what other facts touching the same matters were rightfully before the jury to justify their verdict." Under the rule the effect of the general verdict is that upon all the proved facts the decedent was free from contributory fault, and the appellant guilty of negligence which was the proximate cause of his death.

It is shown that rule or specification C which appears in a body of special instructions printed upon the current time-table of the Evansville and Indianapolis Railway Company, imposing upon the responsible agents in charge of trains, when tracks of two railroads cross each other, "or in any way connect at common grade, to bring all trains passing over said roads to a full stop before reaching *such crossings*" as a part of general regulations, was in force at the time of the accident. The words of the rule are *not* before reaching such *connections* or crossings. It is further shown that when Peyton reached the point of intersection he knew that appellant's train was then due at that place, and that he did not stop his train before the collision. From these facts we are asked to hold as against the general verdict, as a matter of law, that the deceased was guilty of contributory negligence. This we can not do without pronouncing these facts an unsurmountable barrier to recovery.

As opposed thereto it appears from the answers that, under the running arrangement of the two companies, which was known to the employes of both, and which had been faithfully observed by the defendant's employes in charge of its trains, for more than six months next before the collision, it was the duty of the defendant to stop its trains on the Y, and before entering upon the track of the Evansville and Indianapolis Railway Company, to send forward a flagman to warn any train approaching on the latter road. Associated with the known duty of appellant, its uniform observance, and rule C above set forth, was rule ninety-four of

the Evansville and Indianapolis Railway Company, which was in like manner in force for the government of its trains, to wit: "All trains must approach the end of double track junctions, railroad crossings at grade, and draw bridges, prepared to stop, and must not proceed until the switches or signals are seen to be right, or the track is plainly seen to be clear. Where required by law all trains must stop." Furthermore when Peyton reached the yard limits, 900 feet distant, he had and kept his train under full control; appellant's usual flag of warning was absent; its switch for passage of its trains to the track of the Evansville and Indianapolis Railway Company had not been set, and its switch target was so placed as to indicate to him a clear and safe track. It is also found as facts in answer to appellant's interrogatories that said rule C did not require Peyton to stop his train at said intersection and ascertain if another train was about to head out upon his track, and that he did not know, and could not by the exercise of reasonable care have known, that appellant's train was about to head out upon it.

We cannot assume any of these latter findings to be conclusions. They were invited by the appellant and permitted by the court as pertinent to the evidence. We must therefore assume on the faith of the general verdict that upon competent and sufficient evidence the jury found that there were other rules and regulations of the company, not before us, and known to the defendant, which modified, or suspended, or waived the application of rule C to the Elnora junction; and also assume, if necessary, that, as construed by the parties themselves, the words of rule C "in any way connect at common grade" was not a term equivalent to "crossing of two railroads"; and also that the parties construed rule ninety-four to mean that when an engineer approaches a railroad junction such as this, and as distinguished from a railroad crossing, with his train under control, and the switch is seen to be right, and the track plainly clear, he may proceed without stopping, and without negligence. Supported by

such presumptions, and the general verdict stands unshaken by the special answers. *Town of Poseyville* v. *Lewis,* 126 Ind. 80; *Ohio, etc., R. Co.* v. *Trowbridge,* 126 Ind. 391; *Rogers* v. *Leyden,* 127 Ind. 50, 59; *Louisville, etc., R. Co.* v. *Schmidt,* 134 Ind. 16.

Appellant complains of instructions numbered five, seven, eight, nine, and twelve, which were given to the jury upon request of the appellee. By number five the jury were told if the plaintiff had proved by a fair preponderance of the evidence the material allegations of either paragraph of her complaint, she was entitled to recover. As we have hereinbefore held that each paragraph of the complaint stated a good cause of action, it follows that this instruction was correct. Number seven was to the effect that if the jury believed from the evidence that by the rules and regulations existing between the two railroad companies it was the duty of the defendant before entering upon the track of the Evansville and Indianapolis Railway Company to stop its trains before reaching the track of the Evansville and Indianapolis Railway Company, and to send forward a flagman to the latter track to give notice and warning to approaching trains, and that at the time of the accident the employes of the defendant did not stop their train, or send forward a flagman before entering upon the track of the Evansville and Indianapolis Railway Company and that by reason of such failure the train of the Evansville and Indianapolis Railway Company without fault or negligence of those in charge collided with appellant's train, and that such collision was caused by the negligence of those in charge of appellant's train and without fault of those operating the Evansville and Indianapolis Railway Company's train, and Peyton was thereby killed, they should find for the plaintiff. Number eight affirmed that it was the duty of the employes of the defendant, in approaching, and before entering upon the Evansville and Indianapolis Railway Company's track, to exercise ordinary care to ascertain the presence of trains on the Evans-

ville and Indianapolis Railway Company's track, that might lead to a collision, and if it was shown by the evidence that the employes in charge of the defendant's train ran said train upon the Evansville and Indianapolis Railway Company's track without the exercise of such care, and the collision and death of Peyton was caused by such negligence, and without fault on his part, there should be a recovery. The ninth and twelfth are of the same general import,—the latter more fully reciting the facts in issue, and which upon the contingency of being proved, the jury was informed, would entitle the plaintiff to recover.

It is objected that these instructions single out and give undue prominence to certain acts and omissions of the defendant, which are declared by the court to constitute negligence, and which were calculated to lead the jury away from a consideration of all the facts and circumstances proved in the case, and in effect misled the jury from finding from all the evidence the fact of negligence, or non-negligence. We do not think the instructions are subject to this objection. In each instance the jury is informed that it must find the existence of the facts recited before it can find negligence. It is the right of each litigant to have the law declared upon the issuable facts supportive of his theory which the evidence tends to prove, and if such facts are found to be established, and are sufficient in law to constitute a cause of action or defense, it is proper for the court so to advise the jury. In such presentation it is not necessary to embody all minor and unfavorable facts, or facts in support of the adversary's theory. If the latter desires a counter presentation from his standpoint he must request it.

Judgment affirmed.