# Southern Indiana Railway Company v. Davis.

[No. 4,840. Filed January 15, 1904. Rehearing denied March 10, 1904.]

RAILROADS.—*Collisions.*—*Injuries to Employe of Other Road.*—*Employers' Liability Act.*—*Contributory Negligence.*—The fact that the engine and train on which plaintiff was employed as fireman was negligently managed, in violation of certain rules and regulations, will not defeat plaintiff's right of recovery against another railroad company for injuries sustained by a collision of his train with the train of the other company, where it appeared that plaintiff was not responsible for the violation of the rules and regulations, but was working under the orders and directions of the engineer and conductor. *pp. 574, 575.*

SAME.—*Rules.*—*Custom and Usage.*—Rules of a railroad company for the management of trains may be made and superseded by habit and custom. *p. 576.*

EVIDENCE.—*Personal Injuries.*—*Pain and Suffering.*—*Declarations.*—In an action for personal injuries, evidence of declarations made by plaintiff in connection with existing suffering, and expressions of pain and suffering, is admissible, but not his declarations as to the manner in which he received his injuries; and the interval of time between the injury and the expression of pain goes to the weight of the testimony, not to its admissibility. *pp. 576-578.*

SAME.—*Improper Evidence.*—*Harmless Error.*—Evidence in an action against a railroad company for injury to a fireman that extra firemen, such as plaintiff, were promoted to regular firemen in

case of vacancies was improper, but not of sufficient importance to amount to reversible error. *p. 578.*

RAILROADS.—*Rules Changed by Custom and Usage.*—*Instructions.*—Defendant can not complain of the refusal of the court to instruct the jury to the effect that if certain written rules of defendant company in the operation of its trains had by practice and custom been changed that plaintiff, an employe of another company, could not excuse himself for intentionally and voluntarily violating such rules, unless he knew of such custom and acted upon it, where the jury found in answer to interrogatories that plaintiff, prior to the accident, knew of such custom and assisted in the operation of trains in conformity therewith. *pp. 578–581.*

DAMAGES.—*Excessive Damages.*—A judgment will not be reversed because of excessive damages where the damages are not so great, in view of the evidence, as to induce the belief that the jury acted from prejudice, partiality or corruption. *p. 581.*

TRIAL.—*Misconduct of Counsel.*—A cause will not be reversed because of the statement of plaintiff's attorney, in his closing argument, "These interrogatories have been put to you by the defendant for the purpose of entangling you," where the court withdrew the language from the jury and admonished and instructed the jury not to consider such statement in deciding the case. *pp. 581, 582.*

From Martin Circuit Court; *H. Q. Houghton,* Judge.

Action by John R. Davis against the Southern Indiana Railway Company. From a judgment for plaintiff, defendant appeals. *Affirmed.*

*F. M. Trissal, J. B. Marshall, J. H. Shea, C. E. Wood* and *Mark Storen,* for appellant.

*A. J. Clark, C. G. Gardiner* and *W. R. Gardiner,* for appellee.

COMSTOCK, J.—The appellee was plaintiff below. The Evansville & Indianapolis Railway Company owns and operates a railroad running north and south by the town of Elnora, in Daviess county, at which place it maintains a station. The Southern Indiana Railway Company, appellant, owns and operates a railroad running east and west from Elnora to Westport, in Decatur county. The latter company uses the former's Elnora station, which it reaches from the north by means of passing its trains over the north stem of a Y onto the main track of the

Evansville & Indianapolis Railway Company, thence backing down to the station, and thence regaining its own track by heading out on the south stem of the Y. On August 24, 1898, as appellant's passenger-train number one, headed in a northerly direction, was in the act of passing from the Y to the main track of the Evansville & Indianapolis Railway Company, it collided with the latter's south-bound locomotive, drawing its passenger-train number thirty-three.

The complaint was in two paragraphs. The first charges the defendant with negligence as follows: "That for the purpose of moving, conducting, and running the locomotives, cars, and trains of the defendant from said town of Elnora to the town of Washington, in the State of Indiana, the defendant the Southern Indiana Railway Company, by an agreement with said Evansville & Indianapolis Railway Company, has certain track privileges over the right of way and railroad tracks of said Evansville & Indianapolis Railway Company from the place where the defendant's switch at Elnora, Indiana, intersects and transfers its locomotives and cars to the main line of said Evansville & Indianapolis Railway Company tracks to the town of Washington as aforesaid; that by the rules and regulations adopted and agreed upon by and between the defendant and said Evansville & Indianapolis Railway Company, it was, at the time hereinbefore complained of, the duty of the defendant, its agents, engineers, conductors, and other employes, in operating its locomotives, cars, and trains, before it entered upon the track of the said Evansville & Indianapolis Railway Company, to stop its locomotives, cars, and trains on said switch, hereinbefore mentioned, and send forward a flagman to prevent the locomotives, cars, and trains that might be upon the said right of way and tracks of the defendant railway company herein from entering upon the right of way and tracks of the Evansville & Indianapolis Rail-

way Company in violation of the rules governing the track privileges of the defendant company upon the right of way and tracks of the said Evansville & Indianapolis Railway Company, and for the purpose of giving to the locomotives, cars, and trains of the Evansville & Indianapolis Railway Company a preference over said tracks of the Evansville & Indianapolis Railway Company, and for the further purpose of protecting the lives of the employes and the property of said Evansville & Indianapolis Railway Company; that the Evansville & Indianapolis Railway Company trains had right of track inside of yard limits at Elnora; that the defendant negligently and carelessly failed to discharge the alleged duty as above set out, but negligently and carelessly ran its train at the rate of twenty-five miles per hour over said intersection and onto the main track of the Evansville & Indianapolis railroad, and collided with the said train thereon, causing plaintiff's injury." The second paragraph is substantially the same as the first, except that it does not allege that the Evansville & Indianapolis train had the right of track. To these two paragraphs of complaint separate demurrers were addressed, which were overruled by the court, and exceptions were reserved by appellant.

The appellant's answer was in two paragraphs. The first, a general denial. The second sets out the facts of track connection at grade, joint use of track by appellant and the Evansville & Indianapolis Railway Company between Elnora and Washington, Daviess county, for a period of more than four months, during all of which time appellee was a fireman on the Evansville & Indianapolis Railway and was familiar with said joint use of track, station, and yards. "Rule I. S. I. Railway trains and engines will occupy the main track inside the yard limits at Elnora in time of all trains. Have your train under full control." Also rule C and marginal rule, as follows: "(C) When tracks of two railroads cross each other, or in any

way connect at common grade, all trains or engines passing over such tracks must come to a full stop before reaching such crossing. Yard limit signs have been erected at the following points: Overholzen and Lancaster Branch, Worthington, Elnora and Washington. It will not be necessary for any train or engine occupying the main track inside the yard limits to be protected by flagmen except in the time of second-class trains"—were in full force and effect on said date, with full knowledge of appellee. That appellee, with the other employes, disregarded rule C and rule I, and violated the law by running their train at a high rate of speed, to wit, thirty miles per hour inside yard limits at Elnora, without having train under full control, and without coming to a full stop, and without first ascertaining that appellant's train was approaching the intersection, in full view, on its schedule time, and about to pass out on the Evansville & Indianapolis track, where it had right of way at that time.

The plaintiff filed reply in three paragraphs: The first, a general denial. The second alleges that the engine was in the exclusive and full control of the engineer of the Evansville & Indianapolis Railway Company; that he (the appellee) was under complete control and subject to the orders and direction of the engineer and conductor. The third alleges, in substance, that the defendant had for a period of more than four months been in the habit of sending out a flagman at said point of intersection at the time mentioned, and that because of that fact a custom was established which gave the Evansville & Indianapolis train right of track, and therefore a right to proceed across said intersection without stopping, because said flag was not out. Demurrers to second and third paragraphs of reply were overruled, and exceptions taken.

Upon the trial a verdict was returned in favor of appellee for $4,500, of which sum appellee remitted $1,000

and the court rendered judgment for $3,500. A motion for judgment on the facts found in answer to interrogatories submitted to the jury and a motion for a new trial were each overruled, and exceptions taken.

Specifications of the assignment of errors from one to six, inclusive, question the sufficiency of the several paragraphs of the complaint. In the *Southern Ind. R. Co. v. Peyton,* 157 Ind. 690 (a case growing out of the same collision—Peyton was the engineer and appellee was the fireman on the locomotive on the Evansville & Indianapolis Railway), the questions raised by these specifications are decided adversely to appellant.

The seventh and eighth specifications of error relate to the sufficiency of appellee's second paragraph of reply, to which a demurrer was overruled. We have set out the substance of the paragraph in question, and the paragraph of answer to which it referred. It avers that the engine that was so operated as to cause appellee's injury was under the exclusive and full control of the engineer, and that appellee was under the complete control, and subject to the orders of and the directions of, the engineer and conductor.

It is insisted that this paragraph of the reply is bad because it shows that another than appellant caused appellee's injuries. The reply must be considered in connection with the other pleadings to which it relates. The complaint alleges that appellee's injuries were due to the negligence of appellant; the answer, that the collision was caused by the disregard of the law and the rules for the operation of the Evansville & Indianapolis Railway. The reply avers that the appellee was not in any way responsible for either the violation of the law or the rules governing the operation of the Evansville & Indianapolis Railway Company of which he was an employe. The injury to the appellee was due to the negligence of appellant and the Evansville & Indianapolis Railway Com-

pany. Under the employers' liability act, if the accident was due to the negligence of the engineer in control of the engine of which the appellee was fireman, under the averments of the second paragraph of reply, he would have had a right of action against his employer corporation. If the accident was due to the negligence of appellant and Evansville & Indianapolis Railway Company, he would have a right of action against either or both of them. He charges that the negligence of the appellant caused his injury. That the negligence of another corporation, for which he was in no way responsible, contributed to his injury. would not defeat his right of action against appellant.

The ninth and tenth errors assigned question the sufficiency of the third paragraph of reply. It is argued that this paragraph proceeds upon the theory that although the appellant company and the Evansville & Indianapolis Railway Company had written rules made for the purpose of controlling the movements of trains and for the government of employes at the particular time and place in question, to wit, the junction of the two roads at Elnora, yet the employes of the appellant company and appellee could, by a custom or habit established by themselves, without any authority from their employers, change the written rules; that they might then continuously and repeatedly violate the rules, and excuse themselves from negligence on that account. The construction given to rule C (which requires a train approaching a crossing to stop) by the Supreme Court in *Southern Ind. R. Co.* v. *Peyton, supra,* did not require the appellee engineer to stop his train at the intersection of the roads to ascertain whether another train was about to come upon his track. The custom, conduct, and manner of handling both roads for more than four months immediately preceding the accident by their respective conductors, engineers, and employes, gave to and recognized the right of the Evansville & Indianapolis trains to have the right of way in the yards at the town of

Elnora, and at the point therein where appellee was injured; and appellant had daily for said four months, when its trains were approaching the point of junction, sent forward a flagman on the Evansville & Indianapolis road to warn the engineer of any approaching train. The custom, and the omission of which proximately contributed to appellee's injury, was omitted by appellant. Rules may be made and superseded by habit and custom. *Southern Ind. R. Co.* v. *Peyton, supra.*

It is averred that upon the occasion named the appellant failed to give the customary signal. Upon the construction of the rule referred to, we do not feel warranted, upon the facts averred, to hold as a matter of law that the fireman was guilty of contributory negligence.

The following question was propounded to James L. Cox, a witness in behalf of the appellee, upon his examination in chief: "What, if anything, prevented him [appellee] from answering or responding to your calls to go out upon the engines, if you know?" Upon motion of the appellant, the court struck out a portion of the answer, but overruled the motion as to the following: "Some times he would be feeling bad, and would fall down with his ankles." The witness had testified that it was his duty to see that the engineers and firemen reported to him when they were called out. The evidence is claimed to be incompetent, as irresponsive, as self-serving, as made in the absence of appellant and long after the injury was received. It has been frequently decided in this State that an injured person may give in evidence declarations connected with existing suffering, and expressions of it, but can not give an account of the manner in which he received his injuries. The interval of time between the injury and expression of pain would go to the weight of the testimony, but not its admissibility. *Board, etc.,* v. *Leggett,* 115 Ind. 544; *Pierce* v. *Jones,* 22 Ind. App. 163; *City of Huntington* v. *Burke,* 21 Ind. App. 655. The answer was not

directly responsive, but stated facts which appellee was entitled to prove; and the overruling of the motion to strike out was not therefore reversible error.

The following question to the same witness, and answer thereto, were objected to upon the grounds given to the last question considered. "If you know, you may state whether he ever made complaint of his ankle until after he was injured in the wreck of the Evansville & Indianapolis Railway. A. No, sir; never did make any complaint until after he was hurt." The evidence elicited by this question was of a negative character. Necessarily it would be entitled to but little weight, but that was for the jury.

The court permitted the following question to Daniel S. Cook, and the answer thereto, over appellant's objection: "What has been his condition, with reference to his ankles, and also his lower limbs, since the wreck? A. Well, he complained of his ankles for some time after the wreck." What we have said as to the answer of the witness Cox to the first question addressed to him applies here.

The following question addressed to the witness Paine: "What was his condition at the time, and especially with reference to his ankles?" was answered: "Well, he complained of his ankles, and they would swell up on him." The motion to strike out was addressed to the question and answer. The question was proper. It was not error to overrule the motion.

The court overruled the appellant's objection to the following question put to Daniel S. Cook: "What has been his condition with reference to his ankles, and also his lower limbs, since the wreck?" The witness answered: "Well, he complained of his ankles for some time after the wreck." The meaning of the verb "complain" is to express regret or pain. The ruling of the court was not reversible error, for reasons already given.

The following question to Ida Kern: "During that time you may state whether he made any complaint about being unable to labor or work?" was answered: "Well, during the time that he was there he was laid up several different times, complaining of his ankles hurting him; and I made inquiry several times why he was not at work, and they said it was on account of his ankles." The court struck out all after "him." For reasons heretofore given on the consideration of other errors there was no error in this ruling.

John R. Davis, appellee, was permitted to answer over appellant's objection: "State, if you know, how—whether an extra fireman on the Evansville & Indianapolis railway and the Evansville & Terre Haute railway, at the time you were injured, was promoted to regular fireman in case of vacancy?" A. "Yes, sir, they were in line of promotion." The testimony was improper, the promotion was too problematical and uncertain. It was speculative. It does not appear that there was any rule that promotion would follow vacancy. *Richmond, etc., R. Co.* v. *Elliott,* 149 U. S. 266, 13 Sup. Ct. 837, 37 L. Ed. 728; *Brown* v. *Chicago, etc., R. Co.,* 64 Iowa 652, 21 N. W. 193. It does not necessarily follow that because the testimony was improper the judgment should be reversed. It could have had but little weight compared with the rest of the proof as to appellee's claim for damages. We can not believe that the testimony affected the verdict to any appreciable extent.

Appellant complains of instructions numbered four and six given to the jury at the request of appellee. Instruction number four, in effect, said that if the appellee was not charged with the management of, or authorized to manage, the engine and train upon which he was employed, and that, as fireman, he was immediately before and at the time of receiving his injuries subject to the orders and directions of the engineer of the engine on

which he was employed, and, when directed, he was obliged to obey, then the negligence, if any, of said engineer should not be imputed to him. In this there was no error. What we have said with reference to the second paragraph of reply is applicable to this instruction.

Instruction six informed the jury that if the switch target showed the track clear to the engineer and fireman of the Evansville & Indianapolis railway, and that said engineer and fireman saw or might have seen defendant's train approaching the intersection on its Y, they would have the right to presume that the employes in charge of defendant's train would stop the same before it approached so near the Evansville & Indianapolis railway as to make it unsafe for the train on that road to pass by, and they would have had a right to act upon that, and proceed upon their way until they discovered that the employes would not stop their train even though it should then be too late to stop the Evansville & Indianapolis train in time to prevent such collision. Standing alone, the instruction was too broad. But, considered in connection with other instructions upon the question of contributory negligence, we think that it could not mislead the jury. Besides, appellee was not in control of the engine, and the negligence of the engineer and conductor can not be imputed to him.

It is argued that the refusal to give to the jury instructions numbered one, ten, and twenty-one tendered by appellant was error. Instruction one directed the jury to return a verdict in favor of the appellant. It took from the jury the right to determine the question of negligence and contributory negligence. The rejection was not error.

Instruction ten reads: "If you find in this case that the plaintiff John R. Davis could have seen the Southern Indiana train approaching said intersection, and could have known of the danger in time to have avoided it by care proportionate to the dangerous surroundings, then said

John R. Davis is charged with seeing what he could have seen, and knowing what he could have known, and if, under such circumstances, the said John R. Davis did so fail to see and know, and his said failure in any way contributed to his injury, then I instruct you that he can not recover in this action, and your verdict should be for the defendant." In other instructions requested by the appellant and given by the court, the jury, in varying phraseology, were repeatedly and plainly told that it was the duty of appellee to be diligent in the exercise of his natural senses; that he could not recover alone upon the negligence of the appellant, but must himself be free from fault contributing to his injury; that he must be held to have seen what he could have seen by looking carefully and by the exercise of ordinary care. The instruction refused was fully covered by others given, and it was therefore not reversible error to reject it.

Instruction twenty-one is as follows: "There has been evidence introduced for the purpose of showing that the servants of the defendant company had, by practice and custom, changed the written rules of said company governing the movements of their trains at the point of intersection where said accident occurred. I instruct you that no matter what has been the practice and custom of the servants of the two companies as to stopping and flagging their respective trains, unless John R. Davis knew of said practice and custom, and acted upon it, he can not excuse himself for intentionally and voluntarily violating the rules of his said company, with which it was his duty to become familiar. If you find that under such circumstances the said John R. Davis violated the rules of his company in approaching said intersection upon the date of such accident, and you further find that his said violation of said rules in any way contributed to his injury complained of, then I instruct you that he can not recover in this action,

and your verdict must be for the defendant." The jury found, in answer to interrogatories, that prior to the date of the collision the train upon which the appellee was fireman, had been flagged by the servants operating appellant's train in approaching said point of intersection, and that appellee knew the custom of the servants of the appellant railway company, operating its said trains, of flagging the Evansville & Indianapolis railway trains when they were approaching said point of intersection prior to the accident. These special findings show, in the light of instructions given, to the effect that, if the injury of appellee was in any way due to voluntary violation on his part of a rule or rules of his company for his conduct, in the line of his employment, he could not recover, although his injury might also be attributable to the negligence of appellant, that appellant's right could not have been prejudiced by this action of the court as to either of these instructions.

It is contended that the answers to interrogatories are in irreconcilable conflict with the general verdict. Considered together with any other facts, which the jury might have reasonably found under the issues and the evidence, such conflict does not exist.

It is claimed that the damages assessed are excessive. There is evidence that appellee's injury is permanent. "The damages are not so great, in view of the evidence, as to induce the belief that the jury acted from prejudice, partiality, or corruption." This court would not, therefore, under numerous decisions, be sustained in disturbing it. *Lauter* v. *Duckworth,* 19 Ind. App. 535, and cases cited.

W. R. Gardiner, as attorney for appellee, in his closing argument to the jury, with reference to interrogatories which had been submitted to the jury to be answered, used this language: "These interrogatories have been put to you by the defendant for the purpose of entangling you."

The defendant excepted to said language and moved the court that it be stricken out and withdrawn from the jury, and the jury discharged. The court sustained said motion so far as to withdraw said language from the jury, admonished and instructed the jury not to consider said statement in deciding said cause, and no further statement on the subject was made in the jury's presence, but overruled the motion as to the discharge of the jury. In instruction number seven the court said: "In the consideration of this cause you will not consider the question of what party to this suit requested interrogatories to be submitted to you. That is not a matter which you should consider at all, but, in determining the right of the parties to this suit, you should only consider the evidence, and the law applicable thereto, as given by the court." The court properly treated the statement of counsel as improper, and by oral and written instructions directed the jury to disregard it. The withdrawal of the language from the jury by the court, and the admonition and instruction given, induces the conclusion that the appellant was not thereby prevented from having a fair trial. There is evidence fairly tending to sustain the verdict, and, being within the issues, we can not concede the claim of appellant that it is contrary to law.

It is earnestly insisted by appellee that the evidence is not in the record, and that the questions raised by appellant upon the admissibility of certain testimony, and upon the giving of certain instructions, and the refusal to give others, are not properly presented. We have herein, for the consideration of the questions raised, treated the evidence as properly before us.

There is no question as to appellee's injury. There is evidence fairly tending to sustain the verdict of the jury that his injury was proximately caused by the negligence of the appellant, and that appellee was free from fault proximately contributing thereto.

NOVEMBER TERM, 1903—Vol. 32.     583

We find no error for which the judgment should be reversed.  Judgment affirmed.

Wiley, J., concurs in the result.